UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DICHAO XIE,<br><br>Defendant. | Case No.:<br><br>Hon. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY
PENALTIES, AND OTHER EQUITABLE RELIEF**

The Commodity Futures Trading Commission ("CFTC"), an independent federal agency, alleges as follows:

## I.     INTRODUCTION

1. Beginning in at least December 2021 and continuing through March 2022 ("Relevant Period"), Defendant Dichao Xie engaged in a fraudulent scheme to misappropriate material non-public information in breach of a duty to his employer to fraudulently and deceptively enter into trades of feeder cattle futures and options for his personal benefit.

2. During the Relevant Period, Defendant served as a quantitative trader at a large multinational corporation ("Employer A"). In connection with his duties as a quantitative trader, Defendant had access to—and on many occasions, himself entered—Employer A's options and futures positions and associated orders in a number of agricultural commodities, including feeder cattle.

3. On at least 71 instances between December 15, 2021 and March 21, 2022, Defendant improperly used this information to intentionally execute transactions on feeder cattle

futures and options through his personal trading account as counterparty to Employer A, in breach of a duty to his employer. In doing so, Defendant negated the risk inherent in transacting in an open, competitive marketplace. In total, these transactions generated a profit for Defendant of at least $178,075 and an equivalent loss for Employer A.

4. By engaging in this conduct and the conduct further described herein, Defendant violated certain provisions of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and associated CFTC Regulations ("Regulations"), 17 C.F.R. pts 1–190 (2022). Defendant violated Sections 4b(a)(1)(A) and (C), 4c(a)(1) and (2)(A)(ii), 4c(b), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A), (C), 6c(a)(1), (2)(A)(ii), 6c(b), 9(1), and Regulations 1.38(a), 33.10(a) and (c), and 180.1(a)(1) and (3), 17 C.F.R. §§ 1.38(a), 33.10(a), (c), 180.1(a)(1), (3) (2022).

5. Unless restrained and enjoined by this Court, Defendant is likely to continue engaging in the acts and practices alleged in this Complaint.

6. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the CFTC brings this action to enjoin Defendant's unlawful acts and practices and to compel his compliance with the Act. The CFTC also seeks civil monetary penalties and remedial ancillary relief, including restitution to his Employer, disgorgement, pre- and post-judgment interest, and such other equitable relief as this Court may deem necessary and appropriate.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that district courts have jurisdiction to hear actions brought by the CFTC for injunctive and other relief or to enforce compliance with the Act whenever it shall appear to the CFTC that

any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

8. Venue properly lies with the United States District Court for the Northern District of Illinois pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendant transacted business in this District, and certain of the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places. Venue is also proper under 28 U.S.C. § 1391(c)(3) because, on information and belief, Defendant does not reside in the United States.

### III. PARTIES

9. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1–26, and Regulations, 17 C.F.R. pts. 1–190 (2022).

10. Defendant **Dichao Xie** was born in 1988 and is a citizen of China. Upon information and belief, Xie currently resides in London, United Kingdom. During the Relevant Period, Defendant regularly transacted on and through United States futures and options exchanges. Defendant has never been registered with the CFTC in any capacity.

### IV. FACTS

**A. Background**

11. A futures contract is an agreement to buy or sell a commodity or financial instrument for delivery or cash settlement in the future at a specified price. Like all commodity futures markets, the markets for agricultural futures enable producers or consumers to hedge their exposure to the price of those commodities.

12. Options on futures contracts are derivative contracts based on futures contracts. A purchaser of a "call" option has the right to buy a certain futures contract at a specified strike

price until that option has expired. The purchaser of a "put" option has the right to sell a certain futures contract at a specified strike price until that option has expired.

13. Beginning in late 2020 and continuing through the Relevant Period, Defendant was employed by Employer A as a Quantitative Trader and Senior Quant Specialist. In connection with his employment, Defendant was on a team tasked with creating and designing futures and options trading strategies for Employer A. Defendant and his team focused on agricultural futures and options trading on the Chicago Mercantile Exchange ("CME"), a Designated Contract Market located in Chicago, Illinois.

14. CME's electronic trading platform, Globex, is an open-access marketplace that allows traders to view the book of visible orders and prices for futures contracts and options and enter their own orders to buy or sell futures contracts or options. An "order," in the context of electronic exchange trading, is a request submitted to the exchange to buy ("bid") or sell ("offer" or "ask") a certain number of a specified futures contract or option. An order may be for one or more lots. Orders are entered into the exchange's electronic order book, and when there is a willing buyer and seller for a contract at a specified price, a transaction occurs and the orders are executed.

15. A limit order is an order in which the customer specifies a minimum sale price or maximum purchase price, as contrasted with a market order, which requires that the order be filled as soon as possible at the market price.

16. Feeder cattle futures and options contracts are traded on the CME via Globex. Feeder cattle contracts are cash-settled, meaning that, upon expiration of the contract, no physical commodity changes hands. CME offers feeder cattle futures contracts expiring in January, March, April, May, August, September, October, and November of each year.

17. CME uses product codes to denote the type of product being traded. In general, a product code starting with "GF" refers to feeder cattle. The third letter of the product code refers to the expiration month; relevant here are the letters "U" (referring to September), "V" (referring to October), and "X" (referring to November). The final character in the product code denotes the year the contract expires. For all contracts relevant to this Complaint, the product code ends in "2" because all contracts expired in 2022. For example, a product code of "GFU2" would denote a feeder cattle future contract expiring in September 2022.

18. For options contracts, the product code contains the full code for the futures contract on which the option is based, and an additional code denoting whether it is a call option ("C") or put option ("P"), followed by four digits reflecting the strike price of the option. For example, a product code of GFU2 C1700 would refer to a call option with a strike price of $170.00 on the September 2022 feeder cattle futures contract.

**B.  Defendant's Fraudulent Scheme and Fictitious Trades**

19. Employer A's quantitative trading team, including Defendant, was responsible for developing trading strategies and algorithms to trade certain agricultural futures contracts and options on futures. The algorithm developed by this team generated a daily list of limit orders for the relevant futures and options on futures, and this list of limit orders would be used by the team to enter Employer A's orders on an exchange based in Chicago, Illinois.

20. In general, members of the quantitative trading team at Employer A, including Defendant, had access to this daily list of limit orders and would review them before those orders were released to the exchange. Team members, including Defendant, received these proposed orders via email and also could access them through Employer A's internal systems. Team members were given access to this information to identify any unusual orders or orders that

appeared to deviate from the trading logic developed by the team. Accordingly, Defendant had access to Employer A's feeder cattle orders via both the daily list of limit orders, as well as an internal database that tracked Employer A's open positions.

21. Between December 15, 2021, and March 21, 2022, Defendant used his personal account at a London-based futures commission merchant ("FCM A") to trade feeder cattle futures and options directly against Employer A. Specifically, Defendant executed the following feeder cattle futures transactions against Employer A:

| Product | Date | Quantity | Price |
|---|---|---|---|
| GFU2 | 12/15/2021 | 1 | $177.500 |
| GFU2 | 12/15/2021 | 2 | $177.475 |
| GFU2 | 12/16/2021 | 3 | $177.375 |
| GFU2 | 12/16/2021 | 10 | $186.175 |
| GFU2 | 2/11/2022 | 12 | $186.125 |
| GFU2 | 2/11/2022 | 22 | $186.625 |
| GFU2 | 2/14/2022 | 22 | $186.325 |
| GFU2 | 2/25/2022 | 22 | $185.250 |

22. During the Relevant Period, Defendant used his personal account at FCM A to trade options against Employer A. Defendant executed the following options transactions against Employer A:

| Product | Date | Quantity | Price |
|---|---|---|---|
| GFU2 C1780 | 12/15/2021 | 3 | $7.60 |
| GFU2 P1780 | 12/15/2021 | 3 | $8.95 |
| GFU2 | 12/15/2021 | 1 | $177.50 |
| GFU2 | 12/15/2021 | 2 | $177.48 |
| GFU2 P1780 | 12/16/2021 | 3 | $8.10 |
| GFU2 C1780 | 12/16/2021 | 3 | $8.40 |
| GFU2 | 12/16/2021 | 3 | $177.38 |
| GFU2 C1900 | 12/22/2021 | 6 | $3.65 |

6

| | | | |
|---|---|---|---|
| GFU2 C1800 | 12/22/2021 | 4 | $8.28 |
| GFU2 C1800 | 12/23/2021 | 4 | $7.35 |
| GFU2 C1900 | 12/23/2021 | 6 | $4.70 |
| GFU2 C1900 | 12/27/2021 | 10 | $4.55 |
| GFU2 C1800 | 12/27/2021 | 6 | $7.20 |
| GFU2 C1800 | 12/28/2021 | 6 | $9.05 |
| GFU2 C1900 | 12/28/2021 | 10 | $4.25 |
| GFV2 C1900 | 1/10/2022 | 10 | $5.00 |
| GFV2 C1820 | 1/10/2022 | 10 | $9.23 |
| GFV2 C1980 | 1/10/2022 | 6 | $2.78 |
| GFV2 C1820 | 1/11/2022 | 10 | $8.15 |
| GFV2 C1900 | 1/11/2022 | 10 | $5.85 |
| GFV2 C1980 | 1/11/2022 | 6 | $3.65 |
| GFX2 P1700 | 1/18/2022 | 17 | $4.03 |
| GFX2 P1820 | 1/18/2022 | 10 | $9.38 |
| GFX2 C1820 | 1/18/2022 | 9 | $9.88 |
| GFX2 C1900 | 1/18/2022 | 12 | $5.30 |
| GFX2 P1700 | 1/20/2022 | 17 | $4.68 |
| GFX2 C1900 | 1/20/2022 | 12 | $6.78 |
| GFX2 P1820 | 1/20/2022 | 10 | $7.65 |
| GFX2 C1820 | 1/20/2022 | 9 | $9.25 |
| GFX2 P1700 | 1/24/2022 | 20 | $3.98 |
| GFX2 C1900 | 1/24/2022 | 20 | $4.95 |

| GFX2 C1820 | 1/24/2022 | 15 | $9.65 |
| GFX2 P1820 | 1/24/2022 | 12 | $9.35 |
| GFX2 P1700 | 1/26/2022 | 20 | $5.00 |
| GFX2 C1900 | 1/26/2022 | 20 | $6.05 |
| GFX2 P1820 | 1/26/2022 | 12 | $8.50 |
| GFX2 C1820 | 1/26/2022 | 15 | $8.65 |
| GFX2 C1880 | 2/3/2022 | 20 | $8.20 |
| GFX2 P1860 | 2/3/2022 | 23 | $7.58 |
| GFX2 C1880 | 2/7/2022 | 20 | $8.88 |
| GFX2 P1860 | 2/7/2022 | 23 | $8.65 |
| GFU2 P2060 | 2/11/2022 | 12 | $20.80 |
| GFU2 | 2/11/2022 | 10 | $186.18 |
| GFU2 C1700 | 2/11/2022 | 15 | $19.73 |
| GFU2 | 2/11/2022 | 12 | $186.13 |
| GFU2 C1700 | 2/14/2022 | 15 | $18.45 |
| GFU2 P2060 | 2/14/2022 | 12 | $22.23 |
| GFU2 | 2/14/2022 | 22 | $186.63 |
| GFU2 C1700 | 2/22/2022 | 15 | $19.95 |
| GFU2 P2100 | 2/22/2022 | 12 | $23.98 |
| GFU2 | 2/22/2022 | 22 | $186.33 |
| GFU2 C1700 | 2/25/2022 | 15 | $17.40 |
| GFU2 P2100 | 2/25/2022 | 12 | $27.00 |
| GFU2 | 2/25/2022 | 22 | $185.25 |
| GFV2 C1600 | 3/9/2022 | 8 | $25.43 |
| GFV2 P2000 | 3/9/2022 | 8 | $20.85 |

8

| | | | |
|---|---|---|---|
| GFV2 C1600 | 3/9/2022 | 8 | $26.33 |
| GFV2 P2000 | 3/9/2022 | 1 | $19.88 |
| GFV2 P2000 | 3/9/2022 | 6 | $19.88 |
| GFV2 P2000 | 3/9/2022 | 1 | $20.00 |
| GFX2 P1900 | 3/16/2022 | 16 | $13.20 |
| GFX2 P2000 | 3/16/2022 | 13 | $18.65 |
| GFX2 P2060 | 3/18/2022 | 16 | $24.95 |
| GFX2 P1960 | 3/18/2022 | 19 | $15.98 |
| GFX2 P1960 | 3/21/2022 | 1 | $16.30 |
| GFX2 P1960 | 3/21/2022 | 18 | $16.20 |
| GFX2 P2060 | 3/21/2022 | 16 | $24.15 |
| GFX2 P1900 | 3/21/2022 | 13 | $12.63 |
| GFX2 P1900 | 3/21/2022 | 3 | $12.63 |
| GFX2 P2000 | 3/21/2022 | 4 | $19.10 |
| GFX2 P2000 | 3/21/2022 | 9 | $19.10 |

23. For at least 50 of these trades, Defendant, using the CME login credentials provided by Employer A, entered bids and offers on Employer A's behalf through Globex, then immediately executed against those bids or offers for his personal account. Indeed, for some such trades, Defendant waited less than 10 seconds between entering the bid or offer for Employer A and executing the transaction for his personal account.

24. As an employee, Defendant had a duty of trust and confidence to Employer A and owed Employer A a duty to act in its best interests, keep confidential Employer A's material

non-public information, and not misappropriate this information for his own financial or personal benefit. Defendant also owed a duty to Employer A under its policies governing employee conduct to protect Employer A's confidential and proprietary information and avoid using this information for his own personal benefit.

25. On or about September 23, 2020, Defendant signed an agreement to be bound by the company's policies and procedures, including Employer A's Code of Conduct, Agreement to Keep Confidential Information and Trade Secrets, and Employee Handbook and Policies, which included the requirement that he not use confidential company information for personal benefit. Defendant attended trainings on Employer A's Code of Conduct and Ethical Culture, including one such training on or about February 7, 2022.

26. Defendant intentionally or recklessly misappropriated Employer A's material non-public information regarding Employer A's feeder cattle futures and options bids, offers, and trades, and he intentionally or recklessly used that misappropriated information for personal profit. In so doing, he violated the duties he owed to Employer A.

27. As a result of the misconduct alleged above, Defendant received ill-gotten gains amounting to at least $178,075.

### V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

#### COUNT ONE

**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and
Regulation 180.1(a)(1) and (3), 17 C.F.R. § 180.1(a)(1), (3) (2022)
Fraud**

28. The allegations set forth in Paragraphs 1 to 27 are re-alleged and incorporated herein by reference.

29. 7 U.S.C. § 9(1) makes it unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap or contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, including in contravention of 17 C.F.R. § 180.1(a).

30. 17 C.F.R. § 180.1(a) provides, in relevant part, that it shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; or (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

31. As a quantitative trader for Employer A, Defendant possessed material non-public information regarding Employer A's feeder cattle futures and options positions, including the quantity of and at what price Employer A was bidding or asking for feeder cattle futures and options.

32. During the Relevant Period, as alleged above, Defendant executed trades against Employer A on at least 71 occasions. These transactions totaled more than $178,000.

33. During the Relevant Period, as described above, Defendant violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1) and (3) by, among other things, in connection with contracts of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, misappropriating and trading on material non-public information to trade against Employer A for his personal benefit in breach of a pre-existing duty to his employer.

34. Defendant directly engaged in the acts and practices described above intentionally or recklessly.

35. Each use or employment or attempted use or employment of any manipulative device, scheme, or artifice to defraud; misrepresentation or omission of material fact; misappropriation; or act of engaging, or attempting to engage, in acts, practices or courses of business that operated or would have operated as a fraud or deceit; including but not limited to those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1) and (3).

## COUNT TWO

### Violations of Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C) Fraud in Connection with Futures Trading

36. The allegations set forth in Paragraphs 1 to 27 are re-alleged and incorporated herein by reference.

37. 7 U.S.C. § 6b(a)(1)(A) and (C), in relevant part, makes it unlawful for any person in connection with the purchase or sale of a futures contract, made or to be made on or subject to the rules of a designated contract market, for or on behalf of any other person, "(A) to cheat or defraud or attempt to cheat or defraud the other person," or "(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract."

38. As alleged above, during the Relevant Period, Defendant intentionally, or with careless disregard for the legality of his conduct, used information regarding Employer A's bids, offers, and trading in feeder cattle futures to trade those same futures contracts against Employer A in his personal account.

39. By trading in this manner, Defendant misappropriated Employer A's material, non-public information to generate personal trading profits in violation of the duty he owed to Employer A, and thereby cheated, defrauded, and deceived Employer A.

40. Each futures trade Defendant made opposite Employer A, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A) and (C).

## COUNT THREE

### Violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10(a) and (c), 17 C.F.R. § 33.10(a), (c) (2022) Fraud in Connection with Options Trading

41. The allegations set forth in Paragraphs 1 to 27 are re-alleged and incorporated herein by reference.

42. 7 U.S.C. § 6c(b) makes it unlawful for any person to "offer to enter into, enter into or confirm the execution of," any option transaction "contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe."

43. 17 C.F.R. § 33.10(a) and (c) states that "[i]t shall be unlawful for any person directly or indirectly—(a) To cheat or defraud or attempt to cheat or defraud any other person;" or "(c) To deceive or attempt to deceive any other person by any means whatsoever in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction."

44. As alleged above, during the Relevant Period, Defendant intentionally or knowingly used information regarding Employer A's bids, offers, and trading in feeder cattle options to trade those same options contracts against Employer A in his personal account.

45. By trading in this manner, Defendant misappropriated Employer A's material, non-public information to generate personal trading profits in violation of the duty he owed to Employer A, and thereby cheated, defrauded, and deceived Employer A.

46. Each options trade Defendant made opposite Employer A using material non-public information, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6c(b) and 17 C.F.R. § 33.10(a) and (c).

## COUNT FOUR

**Violation of Section 4c(a)(1) and (2)(A)(ii) of the Act,
7 U.S.C. § 6c(a)(1), (2)(A)(ii)
Fictitious Trades**

47. The allegations set forth in Paragraphs 1 to 27 are re-alleged and incorporated herein by reference.

48. 7 U.S.C. § 6c(a)(1) provides:

> It shall be unlawful for any person to offer to enter into, enter into, or confirm the execution of a transaction described in paragraph (2) involving the purchase or sale of any commodity for future delivery (or any option on such a transaction or option on a commodity) or swap, if the transaction is used or may be used to—
>
> (A) hedge any transaction in interstate commerce in the commodity or the product or byproduct of the commodity;
>
> (B) determine the price basis of any such transaction in interstate commerce in the commodity; or
>
> (C) deliver any such commodity sold, shipped, or received in interstate commerce for the execution of the transaction.

49. 7 U.S.C. § 6c(a)(2), in relevant part, provides:

> A transaction referred to in paragraph (1) is a transaction that—
>
> (A)(i) is, is of the character of, or is commonly known to the trade as, a 'wash sale' or 'accommodation trade'; or

        (ii)  is a fictitious sale; or

50.    Fictitious trades include both the unlawful practices specifically enumerated in 7 U.S.C. § 6c(a)(2) as well as trading techniques that give the appearance of submitting trades to the open market while negating the risk or price competition incident to such a market.

51.    During the Relevant Period, Defendant, by using material non-public information to trade feeder cattle futures and options against Employer A in breach of a pre-existing duty, intentionally used techniques to obtain advantageous prices, negate the risk, or reduce price competition in the market.

52.    Each fictitious trade, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6c(a)(1) and (2)(A)(ii).

## COUNT FIVE

### Violation of Regulation 1.38(a), 17 C.F.R. § 1.38(a) (2022)
### Noncompetitive Trades

53.    The allegations set forth in Paragraphs 1 to 27 are re-alleged and incorporated herein by reference.

54.    17 C.F.R. § 1.38(a) requires that all purchases and sales of commodity futures and options be executed "openly and competitively."

55.    By engaging in fictitious trading as alleged in Paragraphs 1 to 27, Defendant also intentionally engaged in noncompetitive trading. For the trades in his personal account that he executed against trades in Employer A's account, Defendant created the appearance of submitting trades to the open market while in fact avoiding competitive execution and negating the risk that he would not execute the trade at the price he sought.

56.    Each noncompetitive trade, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R. § 1.38(a).

## VI. RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A. Find that Defendant violated Sections 4b(a)(1)(A) and (C), 4c(a)(1) and (2)(A)(ii), 4c(b), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A), (C), 6c(a)(1), (2)(A)(ii), 6c(b), and 9(1), and Regulations 1.38(a), 33.10(a) and (c), 180.1(a)(1) and (3), 17 C.F.R. §§ 1.38(a), 33.10(a), (c), 180.1(a)(1), (3) (2022);

B. Enter an order of permanent injunction enjoining Defendant, and any affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with it, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 6b(a)(1)(A) and (C), 6c(a)(1) and (2)(A)(ii), 6c(b), and 9(1), and 17 C.F.R. §§ 1.38(a), 33.10(a) and (c), 180.1(a)(1) and (3);

C. Enter an order of permanent injunction restraining and enjoining Defendant, and all persons in active concert with him, from directly or indirectly:

1) Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

2) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2022)) in accounts held in the name of Defendant or for accounts in which Defendant has a direct or indirect interest;

3) Having any commodity interests traded on his behalf;

16

4) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2022); and

7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2022)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

D. Enter an order directing Defendant, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

E. Enter an order requiring Defendant to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

F. Enter an order directing Defendant to pay civil monetary penalties assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599–600, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2022), for each violation of the Act and Regulations, as described herein;

G. Enter an order requiring Defendant to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2); and

H. Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Dated: March 28, 2023

Respectfully submitted,

*/s Benjamin E. Sedrish*

Benjamin E. Sedrish
Allison V. Passman

Attorneys for Plaintiff
Commodity Futures Trading Commission
77 W Jackson Blvd., Suite 800
Chicago, IL 60604
Tel. (312) 596-0700
Fac. (312) 596-0714
*bsedrish@cftc.gov*
*apassman@cftc.gov*